U.S. COURTS

MAY 0 8 2012

Rcvd_____ Filed_____ Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
KEVIN T. MALONEY, IDAHO STATE BAR NO. 5095
ASSISTANT UNITED STATES ATTORNEY JAMES SMITH
SPECIAL ASSISTANT UNTIED STATES ATTORNEY DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO  83712-7788
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CR 12-0115-S BLW |
| Plaintiff, | ) Case No. |
| | ) |
| vs. | ) **RULE 11 PLEA AGREEMENT** |
| | ) |
| BODYBUILDING.COM, LLC | ) |
| (also doing business as Bodybuilding.com, | ) |
| Higher Power and Higher Power Nutrition), | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## 1.    GUILTY PLEA

A.    **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), Bodybuilding.com, LLC, also doing business as Bodybuilding.com, Higher Power and Higher Power Nutrition (hereinafter "the Defendant"), the attorneys for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Counts One through Five of the Information, each of which charge the Defendant with a Class A misdemeanor of introduction and delivery for introduction into interstate commerce of drugs which were misbranded as defined at 21 U.S.C. § 352(a), in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement.  Upon acceptance of the Defendant's guilty plea, and the Defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a fine of $7.0 million and four years probation.  The Defendant agrees to recommend the same.  Further, under Federal Rule of Criminal Procedure 11(c)(1)(A), the Government will not bring any other charges against the Defendant based upon information currently known to the Government arising out of the investigation of Defendant, or concerning the distribution, through Defendant of drugs labeled as "dietary supplements", as described in the Factual Basis.  The Defendant understands that the Court may consider uncharged "relevant conduct," in arriving at an appropriate sentence pursuant to USSG § 1B1.3.

The defendant further agrees to the following:

1.    Bill Carter is the current General Counsel for the Defendant who is duly authorized

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

by the Board of Managers and all legally necessary parties to speak for the Defendant, appear and enter the guilty plea, and also appear for imposition of sentence.

2.      Prior to the entry of this plea, the Defendant will provide to the United States and the Court written evidence, in the form of a notarized resolution of its managers, with both notary and corporate seals, certifying that the Defendant is authorized to plead guilty to the Information in this case, and to enter into and comply with all provisions of this Agreement.  The resolution shall further certify that the Defendant's authorized representative is authorized to take these actions, and that all corporate formalities, including but not limited to approval by Defendant's managers, required for such authorization have been observed.

**B.      Oath.**  The Defendant's representative will be placed under oath at the plea hearing.  The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

## II.    WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The Defendant understands that by pleading guilty, it waives the following rights: 1) the right to plead not guilty to the offense(s) charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant.  If the District Court accepts the Defendant's guilty plea, there will be no trial.

Plea Agreement                           - 3 -                        Rev. April 2011 (General)

## III.   NATURE OF THE CHARGES

**A.      Elements of the Crime.** The elements of the crime of introduction and delivery for introduction into interstate commerce of drugs which were misbranded as defined at 21 U.S.C. § 352(a), in violation of 21 U.S.C. §§ 331(a) and 333(a)(1), as charged in Counts One through Five are as follows:

    1.      The products I Force Methadrol, Nutra Costal D-Stianozol, I Force Dymethazine, Rage RV5, and Genetic Edge Technologies (GET) SUS500 were drugs as defined at 21 U.S.C. § 321(g);

    2.      I Force Methadrol, Nutra Costal D-Stianozol, I Force Dymethazine, Rage RV 5, and Genetic Edge Technologies (GET) SUS500 were misbranded (hereinafter "the Misbranded Products"), pursuant to 21 U.S.C. § 352(a), in that their labeling was false and misleading, because it identified them as "dietary supplements," despite the fact that they were actually drugs; and

    3.      The Defendant introduced and delivered for introduction into interstate commerce the Misbranded Products.

**B.      Factual Basis.** If this matter were to proceed to trial, the Government and the Defendant agree that the following facts would be proven beyond a reasonable doubt:

The Defendant is headquartered in Meridian, Idaho and advertises itself as the world's largest online supplier of supplements, many of which are shipped from its warehouse in Boise, Idaho.  At all relevant times, Jeremy DeLuca was a corporate officer for the Defendant with direct and oversight responsibility for product acquisition and marketing.

During the time period charged in the Information, the Defendant included on its website a category of products listed for sale under the heading "Hardcore!".  This webpage stated,

"Hardcore Products For Serious Bodybuilders Only!  These cutting-edge products use the latest in muscle-building science to greatly enhance strength, energy, muscle recovery.  Get AMAZING results safely and effectively with the closest products to steroids legally allowed!"

At some point during the time period of March 2006 through September 2009, the Defendant sold the following products, among others, on its "Hardcore" webpage: I Force Methadrol,  I Force Dymethazine, Nutra Costal D-Stianozol, Rage RV 5,  and Genetic Edge Technologies (GET) SUS500 (the "Misbranded  Products").

Defendant sold these Misbranded Products, which were manufactured and packaged by others, labeled as dietary supplements.  "Dietary supplements" are legally defined at 21 U.S.C. § 321(ff) of the federal Food, Drug and Cosmetic Act, as amended by the Dietary Supplement Health and Education Act.  Among other things, dietary supplements must contain one or more "dietary ingredients."  A "dietary ingredient" is a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use by man to supplement the diet by increasing total dietary intake; or a concentrate, metabolite, constituent, extract, or combination of one or more of these dietary ingredients.

None of the Misbranded Products were actually "dietary supplements." Instead, they were drugs, as defined at 21 U.S.C. § 321(g)(1)(C), because they contained synthetic anabolic steroids or synthetic chemical "clones" of anabolic steroids, which were not dietary ingredients, and they were labeled and promoted as products which were intended to affect the structure and function of the human body (building muscle mass).  As such, they were also misbranded drugs, as defined in 21 U.S.C. § 352(a), in that they were falsely and misleadingly labeled as "dietary supplements."

The Defendant and the supplement industry generally referred to these products and others

like them containing Superdrol, Tren, Madol, or similar substances, as "prohormones." During the relevant time period, Bodybuilding.com had a gross gain of $3.5 million from the sale of prohormone products, including the Misbranded Products.

On or about March 9, 2006, an employee for Defendant informed various officers for Defendant including Jeremy DeLuca, that the Food and Drug Administration (FDA) had issued a "warning letter" to a purported dietary supplement manufacturer and another online supplement distributor that a product it carried called "Superdrol" was not a dietary supplement.   Beginning in 2008, at the request of its FDA compliance officer, Defendant began reviewing its inventory of products that contained ingredients similar to and identical to "Superdrol."

From 2007 through 2009, persons working for Defendant communicated regarding the nature of these products and the risks associated with selling them.  The Defendant's FDA compliance officer informed managers, including Jeremy DeLuca, that its prohormone products contained ingredients that did not qualify as dietary supplements.  For example, in June 2007, the FDA compliance officer sent the following e-mail to the then vice president in charge of acquisitions and marketing, Jeremy DeLuca:

> Well, the ingredients are very similar if not exactly the same as products that we have recently added to the site or are getting ready to add to the site. . . Before we started picking up these types of products we should have done more due diligence to find this out. . . Since due diligence was not completed on the other products we currently carry, and the decision was made to carry them anyway, I don't see why you wouldn't pick these ones up.  But if I had it my way, we would not be carrying these types of products until we had documentation (clinical studies, etc.) showing that it is found naturally and an NDI [New Dietary Ingredient] notification is not needed.

The Defendant continued to sell many prohormone products and to bring on new prohormone products after June 2007.

**Plea Agreement**                                    - 6 -                              Rev. April 2011 (General)

On July 28, 2009, Defendant, its officers and employees became aware of a search warrant executed at a California-based company that carried prohormone products containing the same ingredients as in products offered by Defendant. They also became aware of a related FDA warning letter.  In a series of meetings in August and September 2009, Defendant, through its officers, decided to discontinue selling some but not all of its prohormone products.

The Defendant listed the following products, among others, for sale on its "Hardcore" webpage on September 21, 2009:  I Force Methadrol,  I Force Dymethazine, Nutra Costal D-Stianozol, Rage RV 5, and Genetic Edge Technologies (GET) SUS500.

| Ct. | UC Buy or Customer Sale | Ship From/ To | Product Name | Relevant Ingredient in Product | Time Period Sold |
|-----|------------------------|---------------|--------------|-------------------------------|------------------|
| 1 | UC 8/6/2009 | ID to CA | I Force Methadrol | Superdrol a.k.a. methyldrostanolone or methasterone | 8/22/07- 09/24/09 |
| 2 | UC 8/6/2009 | ID to CA | Nutra Coastal D-Stianozol | Madol a.k.a. DMT or desoxymethyltestosterone | 11/30/07- 09/20/09 |
| 3 | UC 2/9/2009 | ID to CA | I Force Dymethazine | Superdrol a.k.a. methyldrostanolone or methasterone | 12/26/08- 09/24/09 |
| 4 | 9/11/2009 | ID to CA | Rage RV 5 | Labeled as containing Madol and Superdrol but actually containing 4-androstenedione | 06/03/09- 09/24/09 |
| 5 | Offered for Sale 8/06/2009 | From ID | Genetic Edge Technologies (GET) SUS500 | Tren a.k.a. 19-Nor-4,9(10)-androstadienedione | 06/03/07- 09/24/09 |

## IV.      SENTENCING FACTORS

A.      **Maximum Penalties.** A violation of 21 U.S.C. §331(a), as charged in Counts One through Five, is a Class A misdemeanor punishable by a maximum fine of up to $200,000 per count, or not more than the greater of twice the gross gain or twice the gross loss (21 U.S.C. § 333(a)(l); 18 U.S.C. § 3571), a maximum term of probation of up to five years (18 U.S.C. § 3561(c)(2)), and a mandatory special assessment of $125 per count.

The Court may place the Defendant on probation for up to five years and impose any lawful conditions of probation.  Violations of probation may result in additional penalties.

B.      **Fines and Costs.** The Court may impose a fine.  The agreement between the parties regarding the fine amount is not binding on the Court.  The Court may also order the Defendant to pay any costs of probation.

C.      **Special Assessment.** The Defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing.  Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

D.      **Restitution.** The parties anticipate no restitution in this case.


## V.      UNITED STATES SENTENCING GUIDELINES

A.      **Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The Defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

**Plea Agreement**                                     - 8 -                          Rev. April 2011 (General)

The Court is not a party to the Plea Agreement.  The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range.  The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines.  While the Court may take the Defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.  Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

**B.**      **Sentencing Guidelines Recommendations and Requests.**

         1.    **Joint Sentencing & Recommendation.** The United States and the Defendant agree to recommend that the Defendant be sentenced to a $7.0 million fine, four years of probation, and a $125 mandatory special assessment per count.

         2.    **Joint Recommendation for Fine Payment Schedule.** The parties will agree upon a fine payment schedule whereby Defendant shall pay $2 million at Sentencing, $2 million not later than December 31, 2013 and $3 million not later than June 30, 2014.

**VI.**     **JOINT AGREEMENT FOR TESTING PROCEDURES AS A PART OF PROBATION**

         **A.**      The Defendant will adhere to a policy requiring all suppliers of products intended for human consumption to:

         1.      Execute a contract which states, among other things that products manufactured by or for supplier shall comply with all applicable laws and regulations of the United States including but not limited to Current Good Manufacturing Practices for Dietary Supplements (21 C.F.R. Part 111); the Food Drug and Cosmetic Act (FDCA); and the Dietary Supplement

Health Education Act (DSHEA).

       2.      Maintain copies of all contracts with vendors and make the same available to the Government for inspection upon request.

       3.      Maintain liability insurance in an amount to be determined by the Defendant in its reasonable discretion.

B.     The Defendant will maintain its membership in the American Herbal Products Association (AHPA) or a comparable industry trade association and will:

    1.   Study and assess the feasibility of establishing a comprehensive cost effective testing program designed to detect the presence of banned or illegal ingredients and misbranding of dietary supplements.  At a minimum, the testing program will include one or more of the following:

- Certification that the product's label accurately reflects the presence or absence of the ingredient being tested;

- Establish testing criteria and detection levels that meet industry and Food and Drug Administration standards;

- Test for the presence of ingredients that:

  are not "dietary ingredients" as defined at 21 U.S.C. § 321 (ff);

  are illegal substances; or are substances banned by the U.S. Anti- Doping Agency (USADA).

C.     The Defendant will maintain a written process for implementing recalls initiated by the Government, a product supplier or the Defendant that includes maintaining records of any such recall(s) in accordance with the Defendant's records retention policy.

D.     Without waiving any rights, the Defendant will timely respond to any inquiries by the Government pertaining to a product being sold by the Defendant.

E.     The Defendant will establish an internal committee called the "Regulatory Compliance Committee" to prevent the sale of new products being offered by the Defendant which contain synthetic anabolic steroids, synthetic chemical "clones" of anabolic steroids, or "prohormones", which are not dietary ingredients (as defined at 21 U.S.C. § 321 (ff)).

F.     The Defendant will monitor FDA's website, trade publications and mainstream media for reports of products containing synthetic anabolic steroids, synthetic chemical "clones" of anabolic steroids or "prohormones".   If the FDA determines a specific product contains a synthetic anabolic steroid, synthetic chemical "clone" of an anabolic steroid or "prohormones" which are not dietary ingredients (as defined at 21 U.S.C. § 321(ft)(l)), and Defendant is selling such product, or other products containing the same synthetic anabolic steroid, synthetic chemical "clone" of an anabolic steroids or "prohormones" which are not dietary ingredients, the Defendant will discontinue the sale of such products immediately.

G.     The Defendant will enter into a consulting relationship with a qualified consultant. The qualified consultant will consult with the Defendant regarding product ingredients, test results, and assist the Defendant in its effort to avoid carrying products containing synthetic anabolic steroids, synthetic chemical "clones" of anabolic steroids or "prohormones" which are not dietary ingredients.

## VII.   JOINT AGREEMENT FOR DESTRUCTION OF PRODUCTS

Since the execution of the search warrant in this case, the Defendant initiated a voluntary recall of the products listed in the search warrant affidavit.  The Defendant has also agreed to hold

any of the aforementioned products that they had stocked in their warehouses in quarantine. The Government is aware that the FDA has requested that the Defendant destroy the quarantined products. The Defendant will not destroy the quarantined products until after sentencing. The Defendant will then destroy all quarantined products upon order of the Court. The parties acknowledge that the Government will seek such an order. Upon the event of destruction of the quarantined products, the Defendant will certify in writing that it has carried out the order of the Court.

Defendant relinquishes any interest in the products seized pursuant to the search warrant. FDA may destroy, or cause the destruction of all such products.

## VIII.  WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A.      In exchange for this Agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The Defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the Defendant might file challenging the plea, conviction or sentence in this case. Further, if the Defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action. If the Defendant believes the Government has not fulfilled its obligations under this Agreement, the Defendant will object at the time of sentencing; further objections are waived.

B.      Notwithstanding subparagraph A, the Defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the Defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete

waiver of all appellate rights:

1.    the sentence imposed by the District Court exceeds the statutory maximum;

2.    the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3.    the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

Notwithstanding subparagraph A, the Defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## IX.    PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## X.    NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

Plea Agreement                                    - 13 -                        Rev. April 2011 (General)

## XI.   CONSEQUENCES OF VIOLATING AGREEMENT

A.   **Government's Options.** If the Defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the Defendant on other charges, including charges not pursued due to this Plea Agreement.  Such charges may be brought without prior notice.  In addition, if the Government determines after sentence is imposed that the Defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re- prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

B.   **Defendant's Waiver of Rights.** If the Defendant fails to keep any promise made in this Agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this Agreement.  In addition, for any charge that is brought as a result of the Defendant's failure to keep this Agreement, the Defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the Defendant entered into this Agreement.

## XII.   MISCELLANEOUS

A.   **No Other Terms.** This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant.  This Agreement does not prevent any governmental agency from

pursuing civil or administrative actions against the defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho.  The Government will bring the Defendant's cooperation and pleas to the attention of other prosecuting authorities at the Defendant's or Defendant's counsel's request.

        B.        Plea Agreement Acceptance Deadline.  This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 4:00 p.m. on May 4, 2012.

## XIII.  UNITED STATES' APPROVAL

        I have reviewed this matter and the Plea Agreement.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

By:

_____
WENDY J. OLSON United States Attorney

_____
Date   5/7/12

_____
KEVIN T. MALONEY
Assistant United States Attorney

_____
Date   5/7/12

For: _____
JAMES SMITH
Special Assistant United States Attorney

_____
Date   5/7/12

## XIV.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I

understand the Agreement and its effect upon my potential sentence.  Furthermore, I have

discussed all of my rights with my attorney and I understand those rights.  No other promises or

inducements have been made to me, directly or indirectly, by any agent of the Government,

including any Assistant United States Attorney, concerning the plea to be entered in this case.  In

addition, no one has threatened or coerced me to do, or to refrain from doing, anything in

connection with this case, including to enter a guilty plea.  I am satisfied with my attorney's

advice and representation in this case.

_____          _____5/7/12_____
Bill Carter                                                        Date
General Counsel for and Corporate
Representative for the Defendant


I have read this Plea Agreement and have discussed the contents of the Agreement with my

client.  The Plea Agreement accurately sets forth the entirety of the Agreement.  I concur in

my client's decision to plead guilty as set forth above.

_____          _____5/7/12_____
DRU NIELSEN                                                  Date
SEAN CONNELLY
LARRY POZNER
Attorneys for the Defendant


Plea Agreement                               - 16 -                    Rev. April 2011 (General)